IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBIN ANN YOUNG | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO. 21-1610 |

## MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                        September 20, 2023

Robin Ann Young ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply. For the reasons set forth below, Plaintiff's request for review is granted and the case remanded to the Commissioner.

### I.     PROCEDURAL HISTORY[1]

On September 22, 2017, Plaintiff applied for DIB, alleging that her disability commenced on August 25, 2015. R. 15. The claim was denied initially; therefore, Plaintiff requested a hearing. *Id.* On April 11, 2019, Plaintiff appeared for a hearing, before Elana Hollo, Administrative Law Judge ("the ALJ"); Plaintiff, represented by an attorney, and Ms. Woodum, a vocational expert ("the VE"), testified at the hearing. *Id.* On June 19, 2019, the ALJ, using the sequential evaluation

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Memorandum of Law ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record. ("R.").

process ("SEP") for disability,[2] issued an unfavorable decision. R. 15-28. The Social Security Administration's Appeals Council denied Plaintiff's request for review, on February 9, 2021, making the ALJ's findings the final determination of the Commissioner. R. 1-3. Plaintiff presently seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II. FACTUAL BACKGROUND

A. <u>Personal History</u>

Plaintiff, born on July 7, 1977, R. 56, was 41 years old on the date of the ALJ's decision. She completed high school, R. 56, and last worked in 2015. R. 36. Plaintiff lives with her husband, adult son, and minor son. R. 48.

B. <u>Plaintiff's Testimony</u>

At the April 11, 2019 administrative hearing, Plaintiff testified about her physical and mental impairments. R. 42-54. Plaintiff suffers from anxiety and depression, which commenced in 2014, when her husband had an affair with her sister.[3] R. 44-45. Approximately five or six

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

[3] Despite the 2014 affair, Plaintiff still lives with her husband. R. 48.

days a week, she does not answer the phone and stays in bed most of the day. R. 45, 54. Plaintiff experiences panic attacks and is unable to concentrate, because of racing thoughts. R. 45. She has two to four panic attacks each week, that last from one hour to several hours. R. 45-46. Plaintiff is uncomfortable around other people and makes excuses to avoid seeing them. R. 46. She sees a therapist each week and her primary care doctor prescribes medication for her anxiety and depression. R. 46-47.

      Plaintiff rests poorly; typically, she only sleeps for an hour at a time and tries to nap during the day. R. 42. Plaintiff suffers from migraine headaches; if she wakes up with one, she is unable to function. R. 43. These debilitating headaches occur two to three times per week. R. 53.

      Additionally, Plaintiff has reflex sympathetic dystrophy ("RSD") in her dominant, right arm; this ailment causes constant pain in her arm and elbow. R. 47-48. She cannot lift any weight, not even a purse, with her right arm. R. 47. Plaintiff's fingers are constantly numb and painful, despite multiple ganglion cell procedures and surgeries. R. 48. Her hand is so painful that she tries to keep it still at all times. R. 50. Plaintiff is unable to open bottles and drops objects with her right hand. R. 50. She also suffers knee and hip pain; therefore, walking is difficult. R. 49.

      Plaintiff performs no household tasks; her sons do most of them. R. 49. Her husband grocery shops and cooks family meals. R. 49.

C.   <u>Vocational Testimony</u>

      The VE testified that Plaintiff's past job as an automobile accessories salesperson was a

semi-skilled[4], sedentary[5] position, usually performed at the light[6] level. R. 58. The ALJ asked the VE to consider an individual having Plaintiff's age, education, work experience, who is able to perform light work, with the following limitations: occasionally able to climb ramps or stairs; unable to climb ladders, ropes, or scaffolds; occasionally able to stoop, crouch, kneel, but never crawl; frequently able to push and pull with the upper extremities bilaterally; frequently able to reach in all directions bilaterally; able to perform a low-stress job, meaning only occasional decision-making and changes in the work setting; able to perform simple, routine tasks at a consistent pace, but not at a production pace; frequently able to interact with supervisors, coworkers, and the public; and unable to share tasks with coworkers. R. 58-59. The VE responded that such an individual could not perform Plaintiff's past work, because it was semi-skilled and these hypothetical limitations require unskilled[7] work. R. 59. Nevertheless, the individual could perform the following jobs: (1) routing clerk, 41,754 positions in the national economy; (2) marker, 303,533 positions in the national economy; and (3) racker, 43,238 positions in the national economy. R. 59-60.

Next, the ALJ asked the VE to consider the same individual, if they could only occasionally push, pull, handle, and finger with their right upper extremity. R. 60. The VE stated that the three jobs she had indicated not be performed, however, three alternative jobs could be performed: (1) furniture rental consultant, 52,833 positions in the national economy; (2) counter clerk, 11,843

---

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*
[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).
[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).
[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

positions in the national economy; and (3) usher, 10,646 positions in the national economy. R. 61.

The VE was then asked to consider the same person described in the second hypothetic, but who was off-task 20% of the time. R. 61. The VE opined that this person could not work, because employers only tolerate employees who are 10% off-task. R. 62. The VE also stated that, in her experience, employers tolerate no more than six to eight unexcused absences per year. R. 62.

Plaintiff's attorney asked the VE to consider the individual in the second hypothetic, but limited to occasional contact with the general public. R. 63. The VE responded that this person could not perform any of the three jobs identified (furniture rental consultant, counter clerk, and usher). R. 63. Finally, the VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), except for her testimony about employers' off-task and absence tolerances, which was based upon her experience as a vocational counselor. R. 63.

### III.    THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2019.

2. [Plaintiff] has not engaged in substantial gainful activity since August 25, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: cervical spine degeneration, cervical radiculopathy, osteoarthritis, reflex sympathetic dystrophy syndrome. Brain cyst, migraines, obesity, and adjustment disorder with mixed anxiety and depression reaction (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

|   |   |   |
|---|---|---|
| 5. | | After careful consideration of the entire record, the undesigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) EXCEPT: [she] can never crawl or climb ladders, ropes, or scaffolds, and can occasionally climb ramps or stairs, stoop, crouch, or kneel; frequently push or pull with bilateral upper extremities; frequently reach in all directions with bilateral upper extremities; work in a low-stress job, defined as having only occasional decision making and only occasional changes in the work setting; can perform simple, routine tasks at a consistent pace, but not at a production rate pace where each task must be completed within a strict time deadline; and is limited to only frequent interaction with supervisors, general public, and coworkers, with no work involving sharing tasks with coworkers. |
| 6. | | [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565). |
| 7. | | [Plaintiff] was born on July 7, 1977 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563). |
| 8. | | [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564). |
| 9. | | Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [Plaintiff] has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 10. | | Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a)).[8] |
| 11. | | [Plaintiff] has not been under a disability, as defined in the Social Security Act, from August 25, 2015, through the date of this decision (20 CFR 404.1520(g)). |

R. 17-18, 21, 26-28.

---

[8] The ALJ found that Plaintiff could perform the jobs of routing clerk, marker, and racker. R. 27-28.

## IV. DISCUSSION

A. <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B. <u>Burden of Proof in Disability Proceedings</u>

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R.

7

§ 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.     Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform her past relevant work, she could perform other light, unskilled jobs that exist in the national economy and, hence, was not disabled. R. 15-28. Plaintiff disputes the ALJ's decision and argues that the ALJ erred reversibly because: (1) he found that Plaintiff could perform light work, without considering her fatigue symptoms; (2) he found that Plaintiff could perform the jobs of routing clerk, marker, and racker; and (3) the statute which barred the President from removing former Commissioner Saul at will violates federal constitutional separation of powers principles and requires a remand. Pl. Br. at 3-17. The Commissioner denies Plaintiff's assertions. Resp. at 1-22. This court finds that Plaintiff's first claim has merit and requires a remand.

1. <u>The ALJ Improperly Failed to Evaluate Plaintiff's Fatigue</u>

Plaintiff argues that the ALJ erred in finding she could perform light work, because he failed to account for her documented fatigue. Pl. Br. at 3-8. This claim has merit.

There is no dispute that Plaintiff has difficulty sleeping and suffers from daytime fatigue. Plaintiff testified that she suffered from debilitating fatigue that would prevent her from sustaining any kind of work. Plaintiff argues that the ALJ was required to accept her testimony. However, that is incorrect. Instead, the ALJ was required to determine if Plaintiff's testimony about her fatigue would be accepted, because it was consistent with the evidence in the record. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, *4-*6. In making that determination, the ALJ was required to consider the entire record, not just Plaintiff's testimony. *Id.* As explained below, the ALJ failed to address explicitly Plaintiff's fatigue symptoms when assessing her RFC.

The ALJ acknowledged that she was required to apply SSR 16-3p. R. 21. The ALJ expressly noted that, in her Function Report, Plaintiff alleged extreme fatigue. R. 22. The ALJ further acknowledged that Plaintiff testified to a lack of energy, *i.e.,* fatigue. R. 22. The ALJ found, as a general matter, that Plaintiff's assertions about her symptoms were not entirely consistent with the medical and other evidence in the record. Generally speaking, this was a proper basis for decision, under SSR 16-3p. *See* 2017 WL 5180304, *5-*6. However, when the ALJ proceeded to address Plaintiff's symptoms,[9] she omitted Plaintiff's fatigue. *See* R. 22-24 (addressing Plaintiff's physical symptoms and mental health symptoms). Since the ALJ ignored Plaintiff's fatigue, she did not identify evidence in the record that failed to support Plaintiff's testimony, which was necessary in order to disregard Plaintiff fatigue symptoms. SSR 16-3p, 2017

---

[9] SSR 16-3p defines "symptoms" as the claimant's own description or statement about his or her physical or mental impairments. 2017 WL 5180304, *2. The court will use that definition of the term for the balance of this discussion.

WL 5180304, *5-*6.  This court is not permitted independently to search the record to find such evidence, if it exists, because this court is bound to consider only the evidence and explanations the ALJ explicitly relies upon.  *Fargnoli*, 247 F.3d at 44 n.7 (citing *SEC v. Chenery*, 347 U.S. 80, 87 (1943)).  Hence, this case must be remanded so that the ALJ can explicitly consider Plaintiff's fatigue symptoms and decide how much, if at all, those symptoms are supported by the entire record.  Once she has done that, the ALJ will have to decide whether to amend her assessment of Plaintiff's RFC, to accommodate Plaintiff's fatigue.

    2.  <u>The ALJ Properly Evaluated Plaintiff's Reaching Ability</u>

Plaintiff argues that the ALJ erred in finding that she could perform the reaching required for the racker, routing clerk, and marker jobs.  Pl. Br. at 8-13.[10]  This claim lacks merit.

First, Plaintiff contends that her RFC for frequent reaching precludes the racker job, because the DOT indicates that the job requires constant reaching.  Pl. Br. at 8.  The Commissioner concedes this error, but argues it was harmless, because the other two jobs – routing clerk and marker – require only frequent reaching, which Plaintiff's RFC allows.  Resp. at 21-22.  This court agrees that, if Plaintiff's RFC allows for frequent reaching, she can perform the routing clerk and marker jobs, which, together, number over 340,000 positions in the national economy; that quantity is sufficient to render any error about the racker job harmless.  *See Craigie v. Bowen*, 835 F.3d 56, 58 (3d Cir. 1987) (holding that 200 positions in the regional economy was a sufficient number to support a non-disability finding)).

Second, Plaintiff contends that the ALJ erred by finding she could perform frequent reaching.  Pl. Br. at 8-10.  However, as the Commissioner indicates, the ALJ properly analyzed

---

[10] Plaintiff appended to this section of her request for review, a complaint that the ALJ failed to consider the impact of her migraines on her ability to sustain work.  Pl. Br. at 11-13.  This argument is distinct from her preceding argument about her reaching ability and Plaintiff omitted it from her Reply.  Hence, this court deems the argument waived and does not consider it.

the medical evidence in the record concerning Plaintiff's reaching ability and he concluded that it did not warrant further limitation in Plaintiff's reaching capacity. *See* Resp. at 22 (citing R. 25-26). Furthermore, this court notes that, when the ALJ addressed Plaintiff's physical symptoms, she cited abundant evidence in the record which supported her conclusion that Plaintiff was capable of frequent reaching. R. 22-23. Even if some medical evidence in the record contradicts the ALJ's conclusion,[11] the ALJ cited substantial evidence, which is simply more than a scintilla. *Biestek*, 139 S. Ct. at 1154. As such, her finding must be accepted.

### 3. Plaintiff's Separation of Powers Claim Does Not Require a Remand

Plaintiff argues that former Commissioner Saul's appointment by former President Trump violated the federal constitution, because the statute creating the Commissioner of Social Security position made the Commissioner's term of office longer than the Presidential term and it required the President to have cause in order to dismiss the Commissioner. Pl. Br. at 13-17. The Acting Commissioner agrees that the statute is unconstitutional. Resp. at 4. However, the parties disagree about whether Plaintiff can obtain any relief based upon this admitted constitutional violation. This court finds that she cannot.

The Supreme Court has held that the federal constitution vests all executive power in the President. *Seila Law v. Consumer Fin. Protection Bureau*, 140 S. Ct. 2183, 2191 (2020). Since it is impossible for one person to exercise all of that power alone, the Framers expected that the President would rely upon subordinate officers. *Id.* In order for the President to be accountable for the actions of subordinate officers, it is necessary for the President to be able to dismiss any

---

[11] As evidence to contradict the ALJ's conclusion that she was capable of frequent reaching, Plaintiff asserts that it is "unlikely" that her treating pain management specialist, Dr. Dinash Yanamadula, would opine that she could frequently reach. Pl. Br. at 10. However, Plaintiff concedes that Dr. Yanamadula did not specify the degree of limitation in her ability to reach. *Id.* at 9. Hence, Plaintiff's assertion is speculative and, in any event, the ALJ identified substantial evidence to support her conclusion that Plaintiff's symptoms did not preclude frequent reaching.

11

such officers at will. *Id.* (citation omitted). The Court has only recognized two exceptions to this rule: (1) agencies that are led by groups of officers; and (2) inferior officers (not agency heads) having narrowly defined duties. *Id.* at 2192 (citations omitted).

The Commissioner of Social Security, the sole head of the agency, has a six-year term of office and is removable only for neglect of duty or malfeasance in office. 42 U.S.C. § 902(a)(3). As such, § 902(a)(3) violates the federal constitution because it restricts the President's ability to remove the Commissioner. *Seila Law*, 140 S. Ct. at 2191-92. As stated previously, the Acting Commissioner concedes this point. Resp. at 4. Nevertheless, Plaintiff cannot obtain any relief based upon this constitutional violation.

While § 902(a)(3) unconstitutionally restricted the President's authority to remove former Commissioner Saul, the statute creates no defect in the manner Commissioner Saul was appointed. Hence, any actions Commissioner Saul took should not be regarded as void. *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021). Instead, it is customary that a defect in a removal provision does not prevent the agency head from exercising the duties of the office. *Id.* at 1788 n. 24 (citing *Seila Law*, 140 S. Ct. at 2207-2211). In *Collins*, the Supreme Court gave examples of what might cause an exception to this general rule: (1) evidence that a court had prevented the President from removing an agency head, because the President did not have cause to remove the agency head; or (2) the President expressing public displeasure with the agency head and desiring removal of the agency head but for the statute. *Id.* at 1789. Neither example applies herein. Former President Trump never expressed any dissatisfaction with former Commissioner Saul, whom he appointed. Further, by the time President Biden took the oath of office on January 20, 2021 and, thereafter, expressed his dislike for certain actions taken by former Commissioner Saul, Plaintiff's case had already been decided by the ALJ, on June 19, 2019. Thus, the agency action Plaintiff complains

about – the ALJ's decision – took place before any President expressed concern about former Commissioner Saul. Hence, *Collins* teaches that Plaintiff cannot obtain relief. 141 S. Ct. at 1789.

An implementing order and order of judgment follow.